TEXAS & P. RY. CO. et al. v. WHITE.
(No. 7267.)

(Court of Civil Appeals of Texas. Dallas.
March 6, 1915. Rehearing Denied
April 3, 1915.)

**1. TRIAL ⟨⟩296 — INSTRUCTIONS — ERRORS CURED BY OTHER INSTRUCTIONS.**

In an action against the initial carrier and a connecting carrier for damages for delay in transit and for rough handling of live stock, where the evidence showed that any rough handling occurred on the line of the connecting carrier, any error in an instruction authorizing the jury, on finding certain facts, to find defendants jointly liable, was rendered harmless by the connecting carrier's special charge eliminating its liability for delay, but leaving it liable for the rough treatment shown to have been occasioned by its own acts or default.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–713, 715, 716, 718; Dec. Dig. ⟨⟩ 296.]

**2. CARRIERS ⟨⟩219 — CARRIAGE OF LIVE STOCK—LIABILITY OF INITIAL CARRIER.**

The initial carrier of an interstate shipment of live stock is liable for all damages, whether occasioned by its acts or default or the acts and default of its connecting carrier.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 950, 951; Dec. Dig. ⟨⟩219.]

**3. CARRIERS ⟨⟩219—INJURY TO LIVE STOCK —CONTRACT.**

A connecting carrier receiving an interstate shipment from the initial carrier, to be delivered at destination under the initial contract, was bound by the terms thereof and by conversation between the shipper and the initial carrier's agent in regard to the market the shipper wished the cattle to reach.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 950, 951; Dec. Dig. ⟨⟩219.]

**4. APPEAL AND ERROR ⟨⟩1066 — TRIAL ⟨⟩ 252 — INSTRUCTIONS WITHOUT EVIDENCE — HARMLESS ERROR.**

In an action against such carriers for damage from alleged delay and rough handling, where there was evidence that none of the cattle had broken legs or were killed, or that the cars in which they were carried were jammed together, a charge that if the trains in which they were carried were roughly handled by "ramming or jamming cars together, knocking cattle down and against each other, thereby injuring them," was without proper support in the evidence, and prejudicial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4220; Dec. Dig. ⟨⟩1066; Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. ⟨⟩252.]

**5. TRIAL ⟨⟩244 — INSTRUCTIONS — SINGLING OUT EVIDENCE.**

Such charge was also improper because it singled out facts in the case and unduly emphasized their importance.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 577–581; Dec. Dig. ⟨⟩244.]

**6. APPEAL AND ERROR ⟨⟩204 — HARMLESS ERROR—EXAMINATION OF WITNESS.**

Where it was not objected in the lower court that the hypothetical question to a witness did not correctly present the evidence in respect to an inquiry as to the amount of shrinkage of cattle and the damage suffered by the shipper by reason of alleged delay and rough handling error, therein, if any, was not ground for reversal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1149, 1258–1272, 1274–1278, 1280, 1569; Dec. Dig. ⟨⟩204.]

**7. APPEAL AND ERROR ⟨⟩204 — HARMLESS ERROR—ADMISSION OF EVIDENCE.**

Where a telegram upon which a witness stated that he based his opinion as to the decline of the cattle market for such cattle as were shipped, inadmissible as original evidence, was inquired about by defendant on cross-examination and its contents fully disclosed, any error in allowing the witness to testify as to the market conditions based on such telegram was not ground for reversal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1149, 1258–1272, 1274–1278, 1280, 1569; Dec. Dig. ⟨⟩204.]

**8. APPEAL AND ERROR ⟨⟩757—BRIEFS—AFFIRMANCE.**

A brief declaring that appellant agreed to the sufficiency of the statement of the nature and result of the suit by its codefendant and adopted its codefendant's brief, so far as applicable to its own contentions, and suggesting certain counter propositions, etc., and which contained no assignments of error and pointed out no assignments of error mentioned by its codefendant applicable to its "contentions," did not comply with the rules, and judgment against it would be affirmed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3092; Dec. Dig. ⟨⟩757.]

**9. APPEAL AND ERROR ⟨⟩774 — REVIEW — FUNDAMENTAL ERROR.**

Material error apparent on the face of the record affecting the appellant's rights makes it the duty of the Court of Civil Appeals to consider the matter, notwithstanding it is not presented by a brief conforming to the rules.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3096, 3097; Dec. Dig. ⟨⟩ 774.]

Appeal from District Court, Kaufman County; F. L. Hawkins, Judge.

Action by J. B. White against the Texas & Pacific Railway Company and others. Judgment for plaintiff, and defendants appeal. Affirmed in part, and reversed and remanded in part.

W. Dorsey Brown, of Kaufman, and Leake & Henry, of Dallas, for appellants. Wynne, Wynne & Gilmore, of Wills Point, for appellee.

TALBOT, J. Appellee sued the appellants, Texas & Pacific Railway Company and the St. Louis, Iron Mountain & Southern Railway Company, to recover damages for an alleged delay in transit and rough handling of a shipment of cattle from Terrell, Tex., to East St. Louis, Ill. The allegations of the petition, in substance, are: That on the 25th day of February, 1911, he entered into a contract with the agent of the defendant Texas & Pacific Railway Company, at Terrell, to ship five cars of cattle from Terrell to the National Stock Yards at East St. Louis, Ill.; said shipment to be transported over the Texas & Pacific Railway from Terrell to Texarkana, Tex., thence over the St. Louis, Iron Mountain & Southern Railway to destination. That the cattle were intended for a catch market, and the agent of the Texas & Pacific Railway Company, at Terrell, was informed and knew the purposes for which

the cattle were being shipped, and that they were intended to reach the market of February 27, 1911. That the ordinary and usual running time from Terrell to East St. Louis was from 32 to 36 hours, and, had the shipment been handled with ordinary care and dispatch, they would have reached their destination on the night of February 26, 1911, and been ready for the market of the next day. That the cattle were negligently delayed in transit, and did not reach their destination until 5 o'clock in the afternoon of February 27, 1911. That on the 28th day of February, 1911, the market price of such cattle as plaintiff's were had declined at least 20 cents per hundred pounds. That the cattle were negligently and roughly handled en route. ·That the cattle had to remain in the pens at the National Stock Yards over night of February 27th, and during that night encountered a snowstorm. That, as a result of the acts of the defendants, plaintiff claimed that his cattle were damaged to the amount of $1,359.59. The appellant Texas & Pacific Railway Company answered by a general demurrer and general denial. The appellant St. Louis, Iron Mountain & Southern Railway Company denied under oath each of the material allegations of the plaintiff's petition, except that portion of same alleging a contract with the agent of the Texas & Pacific Railway Company, at Terrell, in relation to which it averred it had not sufficient knowledge or information to form a belief. It further averred affirmatively: That, at the time the shipment was tendered to it at Texarkana by the initial carrier, the shipment had already been aboard cars from Terrell to Texarkana some nine or ten hours, and that it was impossible for the Iron Mountain Railway Company to transport the shipment from Texarkana to East St. Louis and get the cattle to the stock pens within the greatest limit of time permitted by the laws of the United States to keep cattle continuously confined aboard cars without feed, water, and rest. That the plaintiff had signed a written agreement extending the time from 28 to 36 hours. That, in order to comply with the law, it was necessary to unload the cattle into the pens at Little Rock, Ark., which was done. That plaintiff's shipment consisted of only five cars of cattle, which was less than a train load, and this defendant transported the shipment out of each division point on its line of railway on the first train, leaving such division point, and over each division of its line of railway the train carrying the plaintiff's shipment moved within its schedule time. A jury trial resulted in a verdict and judgment in favor of the plaintiff against both appellants for the sum of $500, and they appealed.

[1] The first two assignments of error presented by the appellant St. Louis, Iron Mountain & Southern Railway Company are to the effect that the court erred in instructing the jury that the two defendants were jointly liable, if liable at all, to the plaintiff. In disposing of these assignments, we think it sufficient to say that whatever error, if any, there may have been in manner and form of submitting the liability of the two railway companies in the court's general charge, such error was cured or rendered harmless by the special charge given at the instance of the appellant St. Louis, Iron Mountain & Southern Railway Company, in reference to its duties and liability in transporting the cattle. After correctly defining "negligence" and "ordinary care" and telling the jury that the failure of either of the appellants to use ordinary care in the handling of the cattle and in forwarding them to their destination with reasonable promptness and dispatch would be negligence, the facts authorizing a verdict in favor of the plaintiff were grouped and the jury simply told, if they found such facts to exist, to find for plaintiff. By the special charge requested by the appellant St. Louis, Iron Mountain & Southern Railway Company and referred to above, the jury was charged as follows·

"The jury is instructed: That the defendant St. Louis, Iron Mountain & Southern Railway Company was not under any obligation to transport the cattle of plaintiff over its road in any particular time or in any season for any particular market. That the extent of the obligation and duty of the St. Louis, Iron Mountain & Southern Railway Company in regard to the time of transportation was to transport the same over its railroad in a reasonable time under all of the circumstances and conditions, and if you find and believe from the evidence that, under all of the circumstances, the shipment was transported by that defendant in a reasonable time while the shipment was in its hands, then you will not find anything against the defendant on the plaintiff's claim of delay."

There was no testimony, so far as the record discloses, tending to show that the cattle were roughly handled by the appellant Texas & Pacific Railway Company. Whatever rough handling there may have been occurred, according to the testimony contained in the record and the finding of the jury, while the shipment of cattle was in the hands of the St. Louis, Iron Mountain & Southern Railway Company. Under the special charge quoted, the jury was distinctly instructed, if the shipment was transported by the latter company in a reasonable time while the shipment was in its hands, not to find anything against it on plaintiff's claim of delay. So that since the undisputed evidence showed that, if there was any rough handling of the cattle, the same occurred on the road of the appellant St. Louis, Iron Mountain & Southern Railway Company, and since the special charge told the jury, in effect, unless they found there was unreasonable delay in the transportation of the cattle by the St. Louis, Iron Mountain & Southern Railway Company, to find for that company on that issue, the jury was not authorized to assess any damages against that company not oc-

casioned by its acts or default, and hence no material error, if any at all, was committed by the court in submitting to the jury the question of joint liability of the two defendants.

[2] The Texas & Pacific Railway Company, being the initial carrier, was liable for all the damages, whether occasioned by its acts or default or the acts and default of its connecting carrier.

[3] The third and fourth assignments of error of the appellant St. Louis, Iron Mountain & Southern Railway Company, complaining of the admission over its objection of certain testimony in relation to a conversation had between the appellee and the local agent of the Texas & Pacific Railway Company, at Terrell, at the time or just before the cattle were received by that company for shipment in regard to the market appellee wished his cattle to reach, etc., will also be overruled. The shipment of appellee's cattle was a through shipment from Terrell, Tex., to East St. Louis, Ill. The St. Louis, Iron Mountain & Southern Railway Company, as a connecting carrier, received the shipment from the initial carrier at Texarkana, to be transported thence to the point of destination under said contract, and was, it occurs to us, bound by the terms thereof. If this view is correct, it follows also that the court did not err in refusing to give the Iron Mountain Railway Company's special charge made the basis of its fifth assignment of error, instructing the jury not to consider for any purpose against it such conversation.

[4, 5] The sixth assignment of error of the St. Louis, Iron Mountain & Southern Railway Company is as follows:

"The court erred in the language used in its charge to the jury submitting the issue of rough handling in that that portion of the charge was a charge upon the weight of the evidence, unduly emphasized the slight evidence of rough handling, and was not supported by anything in the record."

We think this assignment must be sustained. Upon the issue of rough handling of the cattle, the court charged the jury that if they believed from the evidence that the train or trains in which the cattle were being conveyed between Terrell, Tex., and East St. Louis, Ill., was or were roughly handled, ramming or jamming the cars together, knocking the cattle down and against each other, thereby injuring them, and if they further found that the manner in which the cattle were handled was negligent, and that the negligence (if any) in so handling them, or negligence (if any) in delaying them in transit (if they were so delayed), either or both resulted in damage to such cattle, causing them to shrink in weight and lose in appearance, then to find for the plaintiff such damages (if any) as resulted to the cattle therefrom. The only testimony bearing upon that issue is that of the witness G. Scott, introduced by the appellee. He testified on direct examination:

"I accompanied plaintiff's cattle on the shipment in question here. We started from Terrell and had a very good run. We lost an hour at Hawkins, I believe, and ran very well to Texarkana, and then we commenced falling down clear on into St. Louis. We only had about six cars, I believe, from Terrell to Longview, and they never stopped to switch with us or throw any cars against us and knock us around until we got upon the Iron Mountain. It seemed like we got a local train out of there. We stopped and switched more, and they shoved cars down on us, which knocked the cattle around and against the car and knocked the hair off of them a little bit. It seemed like the cattle were handled a little rougher after we left Argenta; seemed like they didn't give us no run out of there. The train stopped every once in a while, and they were doing more work on it than they had been, picking up more cars and switching more, shoving cars down, and pushing them out; they switched more. After the cattle got to St. Louis, I saw them that afternoon and the next morning early. The cattle looked pretty tough the next morning; they looked tired. There wasn't any of them crippled. I could see that there was hair knocked off of the cattle in places on the hips."

Testifying to the condition of the cattle when they arrived at East St. Louis, he said:

"There was no damage to the cattle to speak of; they were just laid out."

On redirect examination he testified:

"When I testified on cross-examination that there was no damage to the cattle to speak of, I meant there were no legs broken, no dead ones; that is about the size of it. Of course, they were damaged from being out so long. That is where the damage was. There wasn't any damage from broken legs or being dead, ribs shrunk, or nothing like that."

The appellant's witnesses testified, in substance, that the handling was no rougher than that necessarily incident to transportation of cattle on railroad trains. This court has heretofore held, and it is well settled by the authorities generally, that it is improper for the court to single out any one fact in a case and, by too prominently placing the same before the jury, unduly impress them with the idea of its importance. Railway Co. v. O'Conner, 78 S. W. 374. It is also error for the court to charge, as is contended by the appellant St. Louis, Iron Mountain & Southern Railway Company, upon facts which are not in evidence. Both of these well-established rules have been violated, we believe, by that portion of the court's charge assailed by the assignment of error under consideration. It will be observed that the charge tells the jury that if the train or trains in which the cattle were being transported were roughly handled, by *"ramming or jamming the cars together, knocking the cattle down and against each other, thereby injuring them,"* etc. (italics ours), to find for the plaintiff such damages as resulted to the cattle therefrom. It is clear, we think, that the "phraseology used by the court in submitting this issue to the jury was overdrawn and calculated to give the issue a significance in the mind of the jury to which it was not entitled under the evidence." There is no evidence that the cars, or the "train or

trains," in which the cattle were being conveyed were "rammed or jammed together," or that the cattle, or any of them, were knocked down or against each other by any such handling of the train or trains, or otherwise, as indicated in the charge. In such state of the evidence the use of the intense terms, "ramming," or "jamming" the cars together, and the language "knocking the cattle down and against each other, thereby injuring them," was improper and prejudicial to the appellant St. Louis, Iron-Mountain & Southern Railway Company and requires a reversal of the case as to it.

[6, 7] The other assignments of error have been examined with the conclusion reached that neither of them points out reversible error. The hypothetical question referred to in the seventh and eighth assignments of error does not fairly state or reflect the evidence upon which it was based, and the telegram referred to in the statement accompanying said assignments, and upon which the witness stated that he based his opinion that the cattle market for such cattle as he had shipped had declined from Monday to Tuesday (the latter being the day his cattle were sold) from 10 to 20 cents, was inadmissible as original evidence, but these matters, as they come to this court, cannot be reviewed and a reversal predicated upon them. The point does not seem to have been made in the lower court that the hypothetical question put to the witness did not correctly present the facts in evidence in relation to the matter inquired about, and the explanation of the court appended to the bill of exceptions reserved to the admission of the testimony, showing the contents of the telegram mentioned, discloses that said telegram was inquired about by the appellant on cross-examination and its contents fully disclosed. In this state of the record we would not be warranted in reversing the case on the ground urged that there was error in admitting the testimony of the plaintiff's witnesses of their opinion as to the amount of the shrinkage of plaintiff's cattle, and the damage suffered by him, or that the witness should not have been allowed to testify in regard to the condition of the market based on said telegram. So much we have thought proper to say in this connection because of the probability of another trial.

[8] The appellant Texas & Pacific Railway Company has not filed a brief in this court in accordance with the rules, and the judgment of the district court as to it will be affirmed. There is what purports to be a brief filed by it found in the record, which announces that:

"This appellant agrees to the sufficiency of the statement of the nature and result of the suit by its codefendant St. Louis, Iron Mountain & Southern Railway Company and adopts the brief of its codefendant filed herein, as far as same may be applicable to the contentions of this appellant, and in addition thereto suggests the following counter proposition," etc.

This purported brief does not contain a single assignment of error, nor does it point out any assignment of error mentioned by its codefendant which is applicable to its "contentions." Furthermore, what its "contentions" are, aside from the counter proposition which it states, and which cannot be considered for the want of an assignment of error, are not stated. We are left, then, unaided to search the brief of the appellant St. Louis, Iron Mountain & Southern Railway Company for some assignment of error presented by it that may be applicable to some supposed contention of appellant .Texas & Pacific Railway Company, and upon it reverse the case as to it. This we are not required to do, and would not be authorized to do so.

[9] Of course, if there was a material error apparent on the face of the record affecting the Texas & Pacific Railway Company's rights, it would be our duty to consider the matter, but there is no such error disclosed by the record. Therefore the judgment of the court below as to the appellant Texas & Pacific Railway Company is affirmed, and, for the reason indicated, said judgment as to the appellant St. Louis, Iron Mountain & Southern Railway Company is reversed, and the cause remanded.

Affirmed in part; reversed and remanded in part.